**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | |
|---|---|
| **GARY MCLEAN, individually, and on behalf of all others similarly situated,** | |
| *Plaintiff,* | |
| **v.** | |
| **WALMART, INC.,** | Case No.: _____ |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Gary McLean, ("Plaintiff") bring this Class Action Complaint against Defendant, Walmart, Inc., ("Defendant") individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit on behalf of themselves, and all others similarly situated who purchased Walmart's "Great Value" 8oz Apple Juice in a 6 pack, which were packaged in 8 oz PET plastic bottles with code UPC 0-78742-29655-5[1] and Great Value 100% Apple Juice 64 oz with the code UPC 0-78742-229539 (the "Products"). The Products are unfit for their intended use because they contain inorganic arsenic above action level set in industry guidance (13.2 parts per billion)[2]. The Products are formulated, designed,

---

[1] https://www.accessdata.fda.gov/scripts/ires/?Product=209660 (last accessed September 3, 2024).
[2] *Id.*

manufactured, advertised, sold, and distributed by Defendant or its agents to consumers, including Plaintiff, across the United States.

2.      The states and territories included in the apple juice recall are Alabama, Connecticut, D.C., Delaware, Florida, Georgia, Illinois, Indiana, Kentucky, Massachusetts, Maryland, Maine, Michigan, Mississippi, North Carolina, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Puerto Rico, South Carolina, Tennessee, Virginia, Vermont and West Virginia ("the States").

3.      Arsenic is a heavy metal that occurs naturally in the earth's crust, usually in organic forms, but also has been processed and used in various forms in industries including metal manufacturing, chemical manufacturing and agriculture.[3]

4.      There are two types of arsenic: organic and inorganic. Inorganic arsenic is considered more dangerous, and apple juice is one source of exposure to inorganic arsenic.[4]

5.      Short-term exposure to very high amounts of inorganic arsenic can result in nausea, vomiting, bruising, and numbness or burning sensations in the hands and feet.[5]

6.      Current research indicates that inorganic arsenic is more dangerous than organic arsenic and the health effects from exposure are more severe. Organic arsenic compounds contain arsenic with carbon and are not related to organic farming practices.[6]

7.      Exposure to high levels of arsenic during times of active brain development is associated with adverse neurological effects such as learning disabilities, behavior difficulties, and lowered IQ. Fetuses, infants, and children are particularly vulnerable to the

---

[3] https://news.northeastern.edu/2024/08/28/arsenic-in-apple-juice/ (last accessed on September 3, 2024).
[4] https://www.forbes.com/sites/ariannajohnson/2024/08/26/walmart-recalls-almost-10000-cases-of-arsenic-tainted-apple-juice-heres-what-to-know/ (last accessed on September 5, 2024).
[5] https://www.foodsafetynews.com/2024/08/great-value-apple-juice-recalled-over-high-levels-of-arsenic/ (last accessed on September 5, 2024).
[6] *Id.*

potential harmful effects from arsenic exposure because of their smaller body sizes and rapid metabolism and growth.[7]

8.      For adults, long-term exposure to inorganic arsenic has been associated with skin disorders and increased risks for skin, bladder, and lung cancers, and for cardiovascular disease. For people of all ages, short-term exposure to very high amounts of inorganic arsenic can result in nausea, vomiting, bruising, and numbness or burning sensations in the hands and feet.[8]

9.      The U.S. Food and Drug Administration (FDA)'s limit for inorganic arsenic in apple juice is 10 parts per billion[9] — meaning that each liter of apple juice can contain no more than 10 micrograms of the toxin.

10.     The apple juice recalled by Walmart exceeded this standard (13.2 parts per billion), and the FDA gave the recall a more urgent classification, saying the affected product may temporarily cause adverse health consequences.[10]

11.     Plaintiff brings this suit on behalf of themselves and all other similarly situated consumers who purchased Defendant's apple juice containing inorganic arsenic. Plaintiff has been caused to purchase a defective product that is worthless, or worth less than the price paid.

12.     Each of the products was manufactured by Defendant, distributed and then sold to consumers across the United States, including the states included in the recall.

---

[7] *Id.*
[8] *Id.*
[9] https://www.fda.gov/media/86110/download#:~:text=FDA%20has%20made%20the%20determination,be%20protective%20of%20public%20health. (last accessed September 5, 2024)
[10] https://news.northeastern.edu/2024/08/28/arsenic-in-apple-juice/ (last accessed September 5, 2024)

13.     Through marketing and sale, Defendant represented that the Products are safe and effective for people.

14.     At the time of their purchases, Defendant didn't notify Plaintiff, and similarly situated consumers, of the Product's risk of containing inorganic arsenic exceeding the FDA's standard allowed in apple juice through the product labels, instructions, ingredients list, other packaging, advertising, or in any other manner, in violation of the state and federal law.

15.     Plaintiff purchased one of the Products, while lacking the knowledge that the Product could poison and cause serious harm to those who consumed the Product.

16.     Because Plaintiff and all consumers who purchased the worthless and dangerous Products were injured by the Products, which they purchased under the presumption that the Products were safe, they have suffered losses.

17.     As a result of the above losses, Plaintiff seeks damages and equitable remedies.

## **PARTIES**

18.     Plaintiff, Gary McLean, is a citizen of the State of North Carolina. At all relevant times, Plaintiff McLean has been a resident of Laurinburg, Scotland County, North Carolina. Plaintiff purchased and consumed Great Value 100% Apple Juice, 96fl oz; UPC 0-78742-229539.

19.     Defendant, Walmart, Inc., is a corporation organized under the laws of the State of Delaware, with a principal place of business located at 702 SW 8th Street, Bentonville, Arkansas, 72716 (Benton County).

## JURISDICTION & VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including a named plaintiff, is a citizen of a state different from Defendant.

21.     This Court has personal jurisdiction over Defendant because Defendant purposefully availed itself to the benefits of doing business in this District by selling the Products to consumers in this District, by maintaining Walmart stores throughout this District, and because Defendant's principal place of business is within this District. This Court also has personal jurisdiction over Defendant because a substantial portion of the events giving rise to Plaintiff's claims occurred in this District.

22.     Venue is proper under 28 U.S.C §1391 because a substantial part of the acts, events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District. Furthermore, Defendant is headquartered in this District, transacts business in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District.

## FACTUAL ALLEGATIONS

23.     Plaintiff re-alleges and incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

24.     On August 15, 2024, Walmart recalled 9,535 cases of its 8-ounce Great Value brand apple juice bottles and the Great Value 100% Apple Juice, 96 fl. oz. after discovering

the bottles contain high levels of inorganic arsenic that exceed industry standards, according to a notice by the FDA.[11]

25.    Back in June of 2023, the FDA prepared a Guidance for the Industry containing recommendations to manufacturers on the action level of 10 parts per billion for inorganic arsenic in apple juice with the intention to help protect health by reducing exposure to inorganic arsenic that can be achieved with the use of current good manufacturing practices.[12]

**The Products**

26.    The products at hand are brand apple juice made for the consumption of children and adults.

27.    In more detail, these Product are bottles of Walmart's Great Value brand, as seen below:




---

[11] https://www.forbes.com/sites/ariannajohnson/2024/08/26/walmart-recalls-almost-10000-cases-of-arsenic-tainted-apple-juice-heres-what-to-know/ (last accessed on September 5, 2024)
[12] https://www.fda.gov/media/86110/download?attachment (last accessed on September 5, 2024)



28.    Plaintiff bargained for a product that was safe to consume and were thus deprived of the basis of their bargain when Defendant sold them a Product—intended to be frequently and repeatedly consumed— that contains high levels of inorganic arsenic that exceed industry standards, which becomes toxic with repeated consumption, thereby exposing Plaintiff and Class Members (defined below) to potentially severe health consequences.

29.    No reasonable consumer would expect the Products, an apple flavored beverage, would contain high levels of inorganic arsenic. Due to the high levels of inorganic arsenic that exceed the industry standards, Plaintiff and Class Members were injured as a result of purchasing the Products, including, among other things, they purchased and paid for a product that did not conform to what was promised as promoted, marketed, advertised,

packaged, and labeled by Defendant; and they were deprived of the benefit of their bargain; and they spent money on a product that did not have any value or had less value than warranted or that they would not have purchased and consumed had they known the truth about the product.

30.     Additionally, because the facts concern a safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and the members of the Classes the true nature of the Products and to disclose the Products contained a substance known to cause adverse health effects.  Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Products.

31.     Plaintiff and Class Members purchased, and paid a premium, or otherwise paid more for the Products than they otherwise would have—had they known that the Products contained toxic, harmful chemicals. Defendant was best positioned to know of the prolonged effects of inorganic arsenic in its products and failed to disclose the consequences of repeated consumption of the Product to consumers.

## CLASS ALLEGATIONS

32.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.     Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and/ or 23 (c)(4) of the Federal Rules of Civil Procedure, Plaintiff bring this class action on behalf of himself, and a multistate Class defined as:

> **National Class:** All persons in the United States who purchased 8-ounce Great Value brand apple juice bottles and/or the Great Value 100% Apple Juice, 96 fl oz; UPC 0-78742-29655-5 and UPC 0-78742-229539 during the applicable statute of limitations.

34.     In the alternative, pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3)

and/or 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this class action on

behalf of himself, and on behalf of the subclass(es) defined as:

> **North Carolina Subclass:** All persons in the State of North Carolina
> that purchased 8-ounce Great Value brand apple juice bottles and/or
> the Great Value 100% Apple Juice, 96 fl oz; UPC 0-78742-29655-5
> and UPC 0-78742-229539 during the applicable statute of limitations.

> **Arkansas Subclass**: All persons in the State of Arkansas that
> purchased 8-ounce Great Value brand apple juice bottles and/or the
> Great Value 100% Apple Juice, 96 fl oz; UPC 0-78742-29655-5 and
> UPC 0-78742-229539 during the applicable statute of limitations.

35.     The National Class, the North Carolina Subclass, and the Arkansas Subclass

are collectively referred to as the "Class" or "Class Members." The Class excludes

Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal

representatives, employees, co-conspirators, all governmental entities, and any judge, justice,

or judicial officer presiding over this matter.

36.     Certification of Plaintiff's claims for class-wide treatment is appropriate

because all elements of Fed. R. Civ. P 23(a), (b)(2)-(3), as well as 23(c)(4), are satisfied.

Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence

as would be used to prove those elements in an individual action alleging the same claims.

37.     **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The

members of the Class are so numerous and geographically dispersed that individual joinder

of all Class members is impracticable.  While Plaintiff is informed and believes that there are

thousands of members of the Class, the precise number of Class members is unknown to

Plaintiff. Plaintiff believes that the identity of the Class members is known or knowable by

Defendant or can be discerned through reasonable means. Adequate notice can be given to

Class Members directly using information maintained in Defendant's records. Class

members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

38.     **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. The action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to: whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiff were deceptive regarding the risks posed by Defendant's Products;

a.   whether Defendant made representations regarding the safety of the Products;

b.   whether Defendant omitted material information regarding the safety of the Products;

c.   whether Defendant's Products were merchantable;

d.   whether Defendant violated the consumer protection statutes invoked herein;

e.   whether Defendant's conduct alleged herein was fraudulent;

f.   whether Defendant was unjustly enriched by sales of the Products;

g.   whether Defendant's conduct was unlawful and;

h.   whether Plaintiff and members of the Class are entitled to damages and, if so, the measure of such damages.

39.     **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff is a member of the Class, having purchased for personal consumption the Products that were manufactured by Defendant. Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendant's conduct.

40.     **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of the other members of the Class that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the Class' interest.

41.     **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's individual case will also resolve them for the Class' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or the other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense they would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Class to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

42.     **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendant has acted, or refused to act, on grounds generally applicable to the Class, making the final declaratory or injunctive relief appropriate.

43.     Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude litigating it as a class action.

<u>**CAUSES OF ACTION**</u>
*(On behalf of Plaintiff and the Class)*

**COUNT 1: UNJUST ENRICHMENT**

44.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

45.     Plaintiff conferred a monetary benefit on Defendant when they purchased the Products. Defendant failed to disclose to Plaintiff that its Products were unsafe due to high levels of inorganic arsenic that exceed industry standards.

46.     Defendant knew that Plaintiff conferred a benefit and retained that benefit. Defendant was unjustly enriched in retaining the revenues derived from Plaintiff.  Retention of those funds under these circumstances is unjust and inequitable because Defendant failed to disclose that the Products contained high levels of inorganic arsenic that exceed industry standards.

47.     Defendant's omissions caused injuries to Plaintiff and Class Members because they would not have purchased the Products if these facts were known.

48.     Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and the Class Members, proceeds that Defendant unjustly received. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and the Class Members overpaid.

## COUNT 2: NEGLIGENCE

49.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

50.     Because the facts concern a safety-related deficiency in the Product, Defendant was under a continuous duty to disclose to Plaintiff and Class Members the Products contained high levels of inorganic arsenic that exceed industry standards. Furthermore, Defendant, as the owner, manufacturer, marketer, and seller, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the high levels of inorganic arsenic in the Products.

51.     Defendant also owed a duty to consumers to produce a product that was safe for its intended consumption.

52.     Defendant has breached both of these above duties by its actions set forth above.

53.     As a direct result of this breach, Plaintiff suffered an injury in that he has been deprived of their benefit of the bargain. Plaintiff's injuries were caused in fact by Defendant's breach. But for Defendant's negligent manufacture and improper oversight, Plaintiff would not have been injured.

54.     Further, Plaintiff's injuries were proximately caused by Defendant's breach. It is foreseeable that a product with high levels of inorganic arsenic that exceed industry standards would cause injury, and it is foreseeable that a user would lose their benefit of the bargain if they purchased a dangerous apple juice.

55.     Plaintiff and Class members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT 3: NEGLIGENT FAILURE TO WARN

56.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

57.     Defendant manufactured, designed, marketed, and sold the Products in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

58.     Defendant owed Plaintiff and Class members a duty of care and to warn of any risks associated with the Products.

59.     Defendant's Products were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results.

60.     As the direct and proximate cause of the defective condition of the Products manufactured and supplied by Defendant, and specifically Defendant's failure to warn, and Defendant's other negligence or actions described herein, Plaintiff and Class Members were significantly exposed to apple juice with high levels of inorganic arsenic, a proven hazardous substance if it exceeds industry standards, that being the case here. Thus, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

61.     Defendant knew or should have known of the defect but failed to warn Plaintiff and members of the Classes.

62.     Plaintiff had no way of knowing of the Products' latent defect.

63.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Products, other damages, costs, interest and attorneys' fees.

## COUNT 4: FRAUDULENT CONCEALMENT

64.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

65.     At all relevant times, Defendant was engaged in the business of designing, manufacturing, and selling the Products.

66.     Defendant aimed to portray the Products as safe for frequent and repeated consumption and omitted key facts concerning the potential harm from consuming apple juice with high levels of inorganic arsenic.

67.     Defendant, acting through its representatives or agents, delivered the Products to its distributors and through other channels to consumers, including the Plaintiff and Class Members.

68.     Defendant, as the owner, manufacturer, marketer, and seller of the Products, had a duty to disclose because of Defendant's exclusive and/or superior knowledge concerning the composition of the Products. Defendant owed Plaintiff and Class Members a duty to disclose because of the risks associated with a product with high levels of inorganic arsenic that exceed industry standards were known and/or accessible exclusively to Defendant, who had superior knowledge of the facts; because the facts would be material to consumers; because the Defendant actively concealed or understated them; because the Defendant intended for consumers to rely on the omissions in question; and because Defendant made partial representations concerning the same subject matter as the omitted facts. Furthermore, because the Product poses an unreasonable risk of substantial bodily injury, Defendant was under a continuous duty to disclose the Product contained a substance known to have adverse health effects.

69.   Defendant's failure to disclose the potential negative health effects of consuming the Products induced the Plaintiff and Class Members to purchase the Products. Plaintiff and Class Members had no way of knowing that Defendant's representations were false or misleading.

70.   Although Defendant had a duty to ensure the accuracy of the information regarding the Products because such information was within the exclusive knowledge of Defendant and because the information pertains to serious health issues, Defendant failed to satisfy its duty.

71.   Defendant engaged in fraudulent and deceptive conduct by devising and executing a scheme to deceptively convey that their products were safe. Defendant's actions were done to gain a commercial advantage over competitors, and to drive consumers, like the Plaintiff and Class Members, away from purchasing a competitor's product.

72.   As a direct and proximate consequence of their reliance on Defendant's omissions and partial representations, Plaintiff and Class Members were significantly exposed to an apple beverage with high levels of inorganic arsenic that exceeded what the industry and FDA deems as acceptable.

73.   Plaintiff and Class Members would not have purchased the Products, or paid as much for the Products, had they known the truth. As a consequence of Defendant's fraudulent and deceptive conduct, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

74.   As a direct and proximate cause of Defendant's fraudulent concealment, Plaintiff, and the Classes, suffered damages in the amount of monies paid for the defective Products.

75.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Products, costs, interest and attorneys' fees.

### COUNT 5: BREACH OF IMPLIED WARRANTIES

76.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

77.     At all relevant times, Defendant was a merchant engaged in the business of designing, manufacturing, and selling the Products.  Plaintiff and Class Members formed a contract with Defendant at the time they purchased the Products.

78.     Implied in the contract was a warranty that the Products were merchantable at the time of sale. Furthermore, at the time the contract was formed, Defendant knew, or should have known, that Plaintiff and Class Members were relying on Defendant's skill or judgment in determining whether the Products were safe to consume and was free from hidden defects that would make the Products unsuitable for their intended purpose.

79.     It is abundantly clear the intended purpose of the Products were to be consumed repeatedly, consistently, and for years to come. Defendant breached the implied warranties about the Products and its qualities because the Products are unfit for the ordinary purposes for which such goods are used.

80.     The Products are unfit for the ordinary purposes for which such goods are used due to the high levels of inorganic arsenic that exceeded the industry standards.

81.     Plaintiff and Class Members were significantly exposed to apple beverages containing high levels of inorganic arsenic, as a direct and proximate result of Defendant's breach of implied warranties. Plaintiff and Class Members would not have purchased the Products had they known the Products did not conform to the warranties. As a consequence

of Defendant's breach of implied warranties, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

82.     Plaintiff and Class Members has been injured such that notice to Defendant is not required.

83.     As a direct and proximate cause of Plaintiff and Class Member's exposure, they suffered damages in the amount of monies paid for the defective Products.

84.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Product, costs, interest and attorneys' fees.

**COUNT 6: BREACH OF EXPRESS WARRANTIES**

85.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

86.     Defendant is engaged in the business of designing, manufacturing, constructing, making, selling, distributing, labeling, advertising, retailing, and/or otherwise placing the Product into the stream of commerce.

87.     Plaintiff and Class Members formed a contract with Defendant at the time Plaintiff and Class Members purchased the Products. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging for the Products and through marketing and advertising. This marketing and advertising constituted express warranties, and became part of the basis of the bargain, and are part of the contract between Plaintiff, other members of the Class, and Defendant.

88.     Defendant purports through its advertising to create express warranties that the Products are of average quality, fit for the ordinary purpose for which apple beverages

are used, does not contain high levels of inorganic arsenic, and is generally safe to consume repeatedly, consistently, and for years to come.

89.     All conditions precedent to Defendant's liability under these contracts have been performed by Plaintiff and Class Members when they purchased the Product and used it as directed.

90.     Plaintiff and Class Members were significantly exposed to apple juice containing high levels of inorganic arsenic as a direct and proximate result of Defendant's breach of express warranties. Plaintiff and Class Members would not have purchased the Products had they known the Products did not conform to the warranties. As a consequence of Defendant's breach of express warranties, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

91.     Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Products, costs, interest and attorneys' fees.

**COUNT 7: STRICT PRODUCTS LIABILITY**

92.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff and Class Members were in the group of persons that Defendant should reasonably have foreseen as being subject to the harm caused by the defectively designed Products insofar as Plaintiff and Class Members were the types of consumers for whom the Products were intended to be used. Plaintiff and Class Members used the Products as intended.

94.     Defendant, who is engaged in the business of selling, manufacturing and supplying the Product placed them into the stream of commerce in a defective and

19

unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the Product.

95.    The Product supplied to Plaintiff and Class Members was defective in design and formulation and unreasonably dangerous when they left the hands of Defendant and they reached the user and consumer of the Products, including Plaintiff and Class Members, without substantial alteration in the condition in which they were sold.

96.    The levels of inorganic arsenic found in the Products were unreasonably and dangerously defective beyond the extent contemplated by ordinary persons with ordinary knowledge regarding these products.

97.    Defendant's Products were defective due to inadequate warning and/or inadequate testing and study, and inadequate reporting regarding the results.

98.    Defendant's Products were defective due to inadequate post-marketing warning or instruction because, after Defendant knew or should have known of the risk of injury from the high levels of inorganic arsenic in the Products, Defendant failed to provide adequate warnings to the Plaintiff, Class Members, and public and continued to promote the Product as safe and effective.

99.    The defective design, formulation, warnings and labeling associated with the Products and the high levels of inorganic arsenic were substantial factors in bringing about the injuries to the Plaintiff and Class Members.

100.    As the direct and proximate cause of the defective condition of the Products manufactured and supplied by Defendant, and specifically Defendant's failure to warn, and Defendant's other actions described herein, Plaintiff and Class Members were significantly exposed to an apple beverage with concerning levels of inorganic arsenic. Thus, Plaintiff and Class Members suffered, and continue to suffer, financial injury.

101.   Plaintiff and the Class Members have suffered damages in an amount to be determined at trial that, among other things, refunds the amount Plaintiff and the Class Members paid for the Products, costs, interest and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually and on behalf of the putative Class, prays for judgment in their favor and against Defendant as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives for the Classes and counsel for Plaintiff as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For pre- and post-judgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

G. For injunctive relief as pleaded or as the Court may deem proper; and

H. For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

I. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: September 11, 2024

Respectfully submitted,

*/s/ Jacob D. White*
Jacob Dylan White, Esq.
Ark. Bar No. 2015239
Russell Winburn, Esq.
**TAYLOR KING LAW**
410 N. Thompson St., Suite B
Springdale, AR 72764
Telephone: 479.935.1761
Fax: 479.334.5069
Email: jacobwhite@taylorkinglaw.com
          russellwinburn@taylorkinglaw.com

-AND-

/s/*Paul J. Doolittle*
Paul J. Doolittle, Esq.[*]
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: pauldoolittle@poulinwilley.com
          cmad@poulinwilley.com

*Attorneys for Plaintiff*
[*]*Pro Hac Vice forthcoming*