IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**GARY McLEAN, Individually and on Behalf of
All Others Similarly Situated**                                                    **PLAINTIFFS**

**V.**                              **CASE NO. 5:24-CV-5189**

**WALMART, INC.**                                                                   **DEFENDANT**

**OPINION AND ORDER**

Now before the Court is Defendant Walmart, Inc.'s Motion to Dismiss based on lack of subject matter jurisdiction and failure to state a claim. (Doc. 26). Plaintiff Gary McLean filed a Response in Opposition (Doc. 31), and Walmart filed a Reply (Doc. 35).

This case arises out of Walmart's recall of its house-brand apple juice because the juice contained inorganic arsenic in amounts that exceeded the action level established by the Food and Drug Administration ("FDA").[1] *See* Doc. 2, ¶¶ 9–10, 24–25. Inorganic arsenic is harmful to humans, especially children. *Id.* ¶¶ 5, 7–8. In 2008, the FDA identified 23 parts per billion ("ppb") as a level of concern for inorganic arsenic in apple juice based on an assessment of short-term exposure risk. U.S. Food & Drug Admin., Action Level for Inorganic Arsenic in Apple Juice: Guidance for Industry 6 (2023) (Doc 2, ¶ 25 n.12).[2] After further study on the risks of chronic exposure to inorganic arsenic, the FDA set the action level for inorganic arsenic in apple juice at 10 ppb in June of 2023. *Id.* at p. 8.

---

[1] An "action level" is the amount of a poisonous or deleterious substance contained in a food at which the food can be considered "adulterated" within the meaning of 21 U.S.C. § 342.  *See* 21 C.F.R. § 109.4(c).

[2]   https://www.fda.gov/media/86110/download?attachment   [https://perma.cc/5EME-7MTH].

1

On August 15, 2024, Walmart recalled 9,535 cases of Great Value apple juice after testing revealed that some of the juice contained 13.2 ppb inorganic arsenic. (Doc. 2, ¶¶ 1, 24). McLean alleges that he purchased the recalled juice without knowledge of its arsenic content and brings this purported class action on behalf of himself and all other U.S. purchasers. *Id.* ¶¶ 15, 18, 31, 33. McLean does not allege that he has suffered any adverse health effects as a result of consuming the juice. McLean seeks both damages and injunctive relief. (Doc. 2, p. 21).

Walmart argues that McLean's claims are moot and that McLean lacks standing because Walmart voluntarily recalled the juice and offered a full refund *before* this case was filed. (Doc. 27, p. 6). "A case is considered moot 'when, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances and a federal court can no longer grant effective relief.'" *Young Am.'s Found. v. Kaler*, 14 F.4th 879, 886 (8th Cir. 2021) (cleaned up) (quoting *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (en banc)). "[T]he difference between standing and mootness doctrines is merely one of 'time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Because the refund program started before the instant litigation, standing, rather than mootness, is the appropriate lens through which to view Walmart's challenge, although the mootness cases cited by the parties provide helpful guidance.

"Article III extends judicial power only to 'cases' and 'controversies.'" *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 716 (8th Cir. 2017). To establish standing under Article III,

a plaintiff must establish that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976) (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)).

With respect to damages, Walmart argues that it has already offered a complete remedy to McLean via its purchase-price refund, so any economic injury McLean has suffered is traceable only to his own failure to take advantage of that refund, not to Walmart's conduct. Walmart also points out that McLean has not alleged that he experienced any other harm—such as adverse health effects—for which he could recover damages beyond the purchase price of the juice.

McLean does not deny that Walmart offered him, and he could take advantage of, a full refund. Instead, he argues that a refund of the purchase price would not compensate him for "the temporary deprivation and lost time value of money" spent on the juice, which, he contends, constitutes an Article III injury. (Doc. 31, p. 4). The Eighth Circuit has not addressed this issue, so the Court turns to the non-binding cases presented by the parties.

Walmart points to *Hoekman v. Education Minnesota*, 519 F. Supp. 3d 497, 510 (D. Minn. 2021), *aff'd*, 41 F.4th 969 (8th Cir. 2022), and *Charlton v. LG Energy Solution Michigan, Inc.*, 2023 WL 1420726, at *5 (S.D. Cal. Jan. 31, 2023). In *Hoekman*, the court found that the plaintiff lacked standing to sue over disputed union dues because the union

had already issued the plaintiff an unconditional refund.  The plaintiff therefore "d[id] not allege any injury for th[e] Court to redress."  519 F. Supp. 3d at 510–11.  And in *Charlton*, the court found that "there is no live case or controversy as required under Article III" where the defendant's "recall program adequately addresses and remedies the alleged [product] defect."  2023 WL 1420726, at *5.

Walmart also cites *Taylor v. Walter Kidde Portable Equipment, Inc.*, 727 F. Supp. 3d 534, 547–48 (M.D.N.C. 2024), which provides a helpful counterexample.  There, the court found that the plaintiffs had standing despite the existence of a recall program because plaintiffs alleged "unresponsive web pages and long wait times for replacement units that never arrive," which meant that plaintiffs were not actually able to take advantage of the supposed recall.  *Id.* at 547.

McLean points to *Hill v. LLR, Inc.*, 2019 WL 2404900, at *7–9 (D. Mont. Mar. 8, 2019), *report and recommendation adopted as modified*, 2019 WL 3024896 (D. Mont. July 11, 2019), and *Weidenhamer v. Expedia, Inc.*, 2015 WL 1292978, at *3–4 (W.D. Wash. Mar. 23, 2015).  *Hill* and *Weidenhamer* both arose from alleged overcharges to consumers.  In *Hill*, purchasers were charged state sales tax even when they purchased products in states with no sales tax.  2019 WL 2404900, at *1.  In *Weidenhamer*, the defendant charged purchasers full price despite advertising a 5% discount for airfare purchased through its mobile app.  2015 WL 1292978, at *1.  In both cases, the courts concluded that "the temporary deprivation of money by defendant, combined with the lost time value of that money, constitutes a cognizable Article III injury."  *Hill*, 2019 WL 2404900, at *8; *Weidenhamer*, 2015 WL 1292978, at *4.

4

Here, the Court finds Walmart's position more persuasive. Walmart offered McLean an adequate remedy before he filed suit, and McLean has not alleged that the refund program is somehow inaccessible. The Court believes that there is an important distinction between claims arising directly from the wrongful deprivation of money, e.g., overcharging or theft, and claims arising from the purchase of defective products. In the former situation, the harm is itself the deprivation of the money. In the latter, the harm is the flaw in the product, and the purported deprivation of money follows from the supposition that the customer would not have paid, or would not have paid as much, for the product if they had known about the flaw. Walmart points out that McLean has not even identified when he purchased the recalled juice, so the Court does not know how much time elapsed between his purchase and Walmart's refund offer. The Court finds that the lost time value—for some unidentified period—of the purchase price of a defective product is, on its own, too conjectural and hypothetical to establish an Article III injury.

Walmart also contests McLean's standing to seek an injunction. When "plaintiffs request forward-looking relief, they must face 'a real and immediate threat of repeated injury.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea*, 414 U.S. at 495–96.

McLean argues that he and the class "have no way to know that the [juice] or any other products under the 'Great Value' brand are accurate or safe to consume as they were deceived once before." (Doc. 31, pp. 7–8). McLean does not assert in his complaint

5

that he wishes to purchase Great Value apple juice or any other Great Value products in the future. Nor does he allege that any Great Value product currently on the shelf at Walmart contains excessive arsenic. McLean's fool-me-once claim for injunctive relief is based on exactly the kind of speculative future harm that courts routinely find insufficient to establish standing; McLean has not shown that he is likely to be harmed by Great Value products in the future, let alone that such harm is imminent. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021). Therefore, McLean does not have standing to seek an injunction.

**IT IS THEREFORE ORDERED** that Walmart's Motion to Dismiss (Doc. 26) is **GRANTED**. The case is **DISMISSED WITHOUT PREJUDICE**.[3]

**IT IS SO ORDERED** on this 14th day of May, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] Walmart asks the Court to dismiss the case with prejudice, but "[a] district court is generally barred from dismissing a case with prejudice if it concludes subject matter jurisdiction is absent." *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464–65 (8th Cir. 2004).